UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Roman Shuba

v.

Civil No. 25-cv-00390-LM
Opinion No. 2026 DNH 107 P

US Embassy in Poland,
Acting Deputy Chief of Mission et al

**O R D E R**

Plaintiff Roman Shuba brings this action to compel the defendants, the U.S. Embassy in Poland's Acting Deputy Chief of Mission and the U.S. Secretary of State, to issue a final adjudication with respect to his fiancée's visa application. Shuba alleges that the government's failure to issue a timely, final decision as to whether to grant or deny his fiancée a visa violates the Administrative Procedure Act ("APA") and Shuba's due process rights. Presently before the court is the government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. no. 8). The government argues that the doctrine of consular nonreviewability bars Shuba's claims, that it has no duty to "re-adjudicate" a refused visa, that Shuba fails to state an APA claim, and that he fails to state a due process claim. For the following reasons, the court grants the motion with respect to Shuba's due process claim, but otherwise denies it.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and

"determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## BACKGROUND

The court will begin its discussion with a brief summary of relevant law applicable to visa applications before turning to the factual and procedural history of this case.

### I. Statutory Overview

A K-1 visa, or "fiancé(e) visa," allows a noncitizen to travel to the United States to marry a United States citizen and then file for adjustment of status to permanent residency. See Jahangiri v. Blinken, No. CV DKC 23-2722, 2024 WL 1656269, at *1 (D. Md. Apr. 17, 2024) (citing 8 U.S.C. § 1101(a)(15)(K)). "To obtain a K-1 visa, the U.S.-citizen fiancé(e) must submit a Form I-129F Petition for Alien Fiancé(e) to United States Citizenship and Immigration Services (USCIS)." Id. The noncitizen fiancé(e) must also submit an application, file supporting documentation, complete a medical examination, and pay certain fees. Id. After this occurs, the

application is sent to the relevant U.S. embassy or consulate, where a consular officer interviews the noncitizen fiancé(e). Id.

"When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA [§] 243(d), discontinue granting the visa." 22 C.F.R. § 41.121(a). An officer may determine that additional information is required from an applicant or that an "Advisory Opinion" is necessary to determine an applicant's eligibility. Jahangiri, 2024 WL 1656269, at *1. In that case, the officer places the matter into "administrative processing" for "future consideration once additional information is received or administrative processing is concluded."[1] Id. "Neither Congress nor any regulations say how long administrative processing may take. Still, because the State Department is subject to the APA, its officers cannot dawdle forever; they must 'conclude a matter presented to' them 'within a reasonable time.'" Dib v. Shea, No. CV 25-4167 (JEB), 2026 WL 1578859, at *1 (D.D.C. June 2, 2026) (quoting 5 U.S.C. § 555(b)).

[1] At this point, the officer issues what is "technically termed a 'refusal'" under 8 U.S.C. § 1201(g) (also INA § 221(g)). Arapov v. Rubio, No. 24-CV-3013-MJS, 2025 WL 2732722, at *2 (D.D.C. Sept. 25, 2025). Because this step occurs under § 221(g) of the INA, 8 U.S.C. § 1201(g), it is commonly referred to as a "221(g) refusal." Id. at *2 n.2. The court will follow that convention in this opinion.

II. Factual and Procedural Background[2]

Shuba is a United States citizen residing in New Hampshire. His fiancée, Marina Astashkina, is a noncitizen residing in Russia. On September 13, 2023, Shuba filed a K-1 visa petition for Astashkina with USCIS. USCIS later approved this petition on May 10, 2024. Around this time, Astashkina submitted a visa application.[3] On September 24, 2024, a consular officer at the U.S. Embassy in Poland interviewed Astashkina in connection with her visa application. On the day of this interview, Astashkina received a "221g notice" informing her that her case had been placed in "administrative processing." Doc. no. 1-3 at 1-2. This notice informed Astashkina that her "visa requires additional administrative processing,"

---

[2] The following facts are drawn from the complaint and the attachments thereto. See CSMI, LLC v. Intelagard, Inc., Civ. No. 24-cv-235-SM-TSM, 2025 WL 1557895, at *2 (D.N.H. June 2, 2025) (explaining that, in ruling on a motion to dismiss, "the court 'may consider not only the complaint but also any documents annexed to it . . . and other such documents that are sufficiently referenced and/or relied upon in the complaint'" (quoting Rivera v. Kress Stores of P. R., Inc., 30 F.4th 98, 102 (1st Cir. 2022))). The court also considers facts set out in Shuba's July 2, 2026 "Notice of Supplemental Facts," doc. no. 13, which the court construes as a motion to supplement the complaint pursuant to Federal Rule of Civil Procedure 15(d). See Stow v. McGrath, Civ. No. 17-cv-088-LM, 2018 WL 1545701, at *3 (D.N.H. Mar. 2, 2018), R&R approved, 2018 WL 1542324 (D.N.H. Mar. 28, 2018) (explaining that "Rule 15(d) affords litigants a pathway for pleading any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" and that "leave to permit a supplemental pleading is favored" (quotations omitted)). The government has not responded to Shuba's Notice or otherwise objected to the court considering the allegations contained therein.

[3] It is not clear from the complaint exactly when this occurred.

and requested that Astashkina submit seven categories of additional information.[4] Id. at 2.

On September 26, 2024, Astashkina submitted the requested information to the U.S. Embassy in Poland. Four days later, the Embassy acknowledged receipt of the information and informed Astashkina that "your case remains denied under INA 221(g) pending the results of necessary administrative processing. We will contact you when it is complete. Please be aware that it may take up to several months to complete." Doc. no. 1-4 at 5. On October 19, 2024, Astashkina again emailed the Embassy to request an update on her case. Two days later, the Embassy informed Astashkina that "your visa application remains denied under INA 221(g) status, pending the completion of necessary administrative processing." Doc. no. 1-4 at 7. The email told Astashkina to "rest assured" that she would be notified "as soon as the administrative processing . . . concludes." Id.

On November 6, 2024, the Embassy emailed Astashkina informing her that, "[y]our case has been processed for conclusion. You may now deliver your passport to the US Embassy." Id. at 8. However, shortly after sending this message, the Embassy sent a subsequent message informing Astashkina that its previous email, which "requested [her] passport for visa issuance," was sent by mistake. Id. at 9. The Embassy again informed Astashkina that her case "remains refused under section 221G . . . pending administrative processing," but that the Embassy would

[4] The letter requested information relating to Astashkina's: (1) travel history; (2) relatives; (3) addresses; (4) phone numbers; (5) passport numbers; (6) occupation; and (7) public-facing social media accounts.

inform Astashkina "as soon as the processing is complete." Id. In January 2025, Astashkina contacted the Embassy to inquire about the status of her application and received a similar message in reply.

In early August 2025, Shuba contacted the office of Congressman Chris Pappas for assistance with Astashkina's visa application. On August 13, Congressman Pappas' office forwarded Shuba an email from the National Visa Center (NVC) with information regarding Astashkina's case. The NVC explained that after Astashkina's interview, "[a] consular officer determined that the applicant had not established eligibility for the visa and refused the petition processing, after which the consular officer may re-adjudicate the case." Doc. no. 1-5 at 3. The email continued, "[w]hile we cannot predict when the additional administrative processing of Marina Astashkina's visa will be completed, depending on the results, a consular officer may reconsider Marina Astashkina's eligibility for the visa later." Id.

On August 26, 2025, Astashkina emailed the Embassy again. She informed the Embassy that she and Shuba were expecting a child together, and inquired about the status of her visa.[5] The Embassy responded: "Your visa application remains refused under Section 221(g) . . . , pending further administrative processing. This means that additional review is pending before a final decision can be made regarding your eligibility for a visa." Doc. no. 1-4 at 16.

[5] Astashkina gave birth to her and Shuba's American-citizen son in Russia on December 29, 2025.

Forced to live on separate continents during Astashkina's pregnancy and during the early months of their young son's life, Shuba and Astashkina have both suffered emotional and financial hardship due to the delay. Shuba alleges that despite repeatedly inquiring about the status of Astashkina's application, it "is unclear what steps, if any Defendants are actually taking to complete adjudication of Marina Astashkina's visa application."[6] Doc. no. 1 at 8.

Shuba filed the instant complaint in this court on October 9, 2025. His first two claims are brought under the APA and the Mandamus Act. The APA requires agencies to conclude matters "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b). Moreover, the APA provides that a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Shuba alleges that the government's unreasonable delay in issuing a final adjudication with respect to Astashkina's visa application violates 5 U.S.C. § 555(b), entitling him to mandamus relief.

Shuba's third claim alleges that the government's delay violates his substantive and procedural due process rights. He alleges that he "has a statutorily created entitlement to adjudication of his fiancée's visa application [and that the government's] delay in adjudicating Plaintiff's fiancée's visa application constitutes a deprivation of Plaintiff's protected interest without due process." Doc. no. 1 at 10.

[6] Shuba informs that court that after he filed the complaint in this matter, on June 11, 2026, the Department of State's website indicated that Astashkina's case had been "Returned to NVC" for administrative processing. Doc. no. 13-1 at 3.

The government has filed a motion to dismiss. Doc. no. 8. It makes four primary arguments. First, it argues that Shuba's claims are barred by the doctrine of consular nonreviewability. Second, it argues that Shuba has failed to state an unreasonable delay claim because he has not identified a clear nondiscretionary duty to act. Third, it argues that Shuba has not sufficiently alleged an unreasonable delay. Fourth, it argues that Shuba has failed to sufficiently allege a due process claim. The court will consider each of the government's arguments below.

## DISCUSSION

### I. The Consular Nonreviewability Doctrine Does Not Compel Dismissal of Shuba's Claims

"A consular officer's decision 'to admit or to exclude [a noncitizen]' is generally 'final and conclusive.'" Teles de Menezes v. Rubio, 156 F.4th 1, 9 (1st Cir. 2025) (quoting Dep't of State v. Muñoz, 602 U.S. 899, 908 (2024)). Under the doctrine of "consular nonreviewability," courts are prohibited from reviewing "a consular officer's denial of a visa."[7] Id. (quoting Muñoz, 602 U.S. at 908). The doctrine is based on the idea that these kinds of discretionary decisions "may implicate 'relations with foreign powers,' or involve 'classifications . . . defined in the light of changing political and economic circumstances,' [so] such judgments 'are frequently of a character more appropriate to either the Legislature or the

---

[7] "[T]he doctrine of consular nonreviewability is not jurisdictional." Muñoz, 602 U.S. at 908 n.4. Accordingly, this challenge based on the doctrine is properly before the court as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Teles de Menezes, 156 F.4th at 9 (citing Raouf v. U.S. Dep't of State, 702 F. Supp. 3d 19, 25 (D.N.H. 2023)).

Executive.'" Trump v. Hawaii, 585 U.S. 667, 702 (2018) (first alteration in original) (quoting Mathews v. Diaz, 426 U.S. 67, 81 (1976)).

There are two primary exceptions to the doctrine. Raouf v. U.S. Dep't of State, 702 F. Supp. 3d 19, 30 (D.N.H. 2023). The first "narrow exception" exists "when the denial of a visa allegedly burdens the constitutional rights of a U. S. citizen." Muñoz, 602 U.S. at 908 (quoting Trump, 585 U.S. at 703). However, this form of review asks only whether there was a "facially legitimate and bona fide reason" for the allegedly unconstitutional action. Id. (quoting Kerry v. Din, 576 U.S. 86, 103-04 (2015)).

The second exception, which this court recognized in Raouf v. U.S. Department of State, "allows for judicial review of claims alleging that a 'consular officer failed to follow nondiscretionary regulatory duties,' i.e., where the plaintiff seeks to compel an immigration official to take an action he or she is already required by law to take." 702 F. Supp. 3d at 30 (brackets omitted) (quoting Ruston v. U.S. Dep't of State, 29 F. Supp. 2d 518, 523 (E.D. Ark. 1998), summarily aff'd, 187 F.3d 643 (8th Cir. 1999)); see, e.g, Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11-13 (D.D.C. 2022) (identifying a "long line of decisions" holding that consular nonreviewability "does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision" because the INA does not give immigration officials "discretion [to] indefinitely . . . delay a decision on a visa application"); Patel v. Reno, 134 F.3d 929, 931-32 (9th Cir. 1997) (holding that court had authority to review consular official's decision to

"suspend" a visa application, which was not "a decision within the discretion of the consul"); see also Teles de Menezes, 156 F.4th at 10 (holding that the doctrine of consular nonreviewability did not bar judicial review of claim that consular officer erroneously reclassified visa applicant thereby delaying visa processing (citing Raouf, 702 F. Supp. 3d at 30-31)).

The government argues that in issuing Astashkina a § 221(g) refusal and placing her application into "administrative processing," "the agency has taken all action that it is legally required to take with respect to Astashkina's application." Doc. no. 8-1 at 8. It contends, therefore, that any relief ordered by the court would compel the government to exercise its discretion to "re-adjudicate" Astashkina's visa application—which, the government asserts, the doctrine of consular nonreviewability bars the court from doing. Shuba argues that, despite the "refusal," no "final decision has been made," so consular nonreviewability does not apply. Doc. no. 10 at 9. See, e.g., Nine Iraqi Allies Under Serious Threat v. Kerry, 168 F. Supp. 3d 268, 292 (D.D.C. 2016) ("[B]ecause the applications . . . remain in 'administrative processing' and, therefore, have not been finally refused, the doctrine of consular nonreviewability does not bar [the plaintiffs'] claims."). The court agrees with Shuba.

Under 8 U.S.C. § 1202(d), "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). 8 U.S.C. § 1202(e) provides that a nonimmigrant visa application "shall be disposed of as may be by regulations prescribed." The applicable regulations state that "the consular

officer must issue the visa, refuse the visa, or, . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). Moreover, "the APA requires a government agency to 'within a reasonable time . . . conclude a matter presented to it,' and empowers courts to 'compel agency action unlawfully withheld or unreasonably delayed.'" Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 153 (D. Mass. 2024) (alteration in original) (first quoting 5 U.S.C. § 555(b), and then quoting 5 U.S.C. § 706(1)).

These authorities require the government to review and adjudicate properly filed visa applications within a reasonable time. See id. ("District courts within this circuit have 'generally found a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'" (quoting Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D.Mass. 2024))); see also Tasneem v. Stufft, No. CV 25-30072-MGM, 2026 WL 905311, at *10 (D. Mass. Mar. 31, 2026) (holding that the INA, the APA, and the agency's regulations "impose a mandatory duty to take all steps necessary to adjudicate properly filed visa applications . . . without unreasonable delay" (quotation omitted)). Both sections of the INA and the applicable regulations use imperative words, "shall" and "must," indicating that consular officers lack discretion to simply decide not to adjudicate an application by withholding a final decision. See Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). Thus, "issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA

and federal regulations." Kahbasi v. Blinken, No. CV 23-1667 (LLA), 2024 WL 3202222, at *5 (D.D.C. June 27, 2024).

The question remains whether a 221(g) refusal fulfills the INA's mandatory obligation to issue a final decision. The answer is no. See Arapov, 2025 WL 2732722, at *4-5 (explaining the "majority view" is that "that a 221(g) refusal—and the concomitant placement of an application into 'administrative processing' limbo" does not suffice (quoting Kahbasi, 2024 WL 3202222, at *5)). When an application is placed into this limbo, it is "still being processed and a decision is still forthcoming. It has only been 'refused' in the far-from-literal sense that it has not yet been 'granted' or 'denied.'" Id. at *5 (quoting Janay v. Blinken, 743 F. Supp. 3d 96, 112 (D.D.C. 2024)). As Judge Sooknanan recently explained:

> When a consular officer decides to refuse a visa-applicant's application for administrative processing, the officer has certainly made a decision about the application: that the applicant should not yet receive the visa and that more processing is required. But . . . the Department of State has not yet made the decision about their applications—the determination that puts their applications to rest . . . [Plaintiffs] never received the all-important yes-or-no decision from the reviewing officer about the benefit they sought to obtain.

Id. (alteration in original) (quoting Thein v. Trump, No. CV 25-2369 (SLS), 2025 WL 2418402, at *9 (D.D.C. Aug. 21, 2025), appeal dismissed, No. 25-5338, 2026 WL 795261 (D.C. Cir. Feb. 17, 2026)).

The allegations in this case make plain that the government has yet to make the necessary decision "whether to grant or to deny" Astashkina's application. Thein, 2025 WL 2418402, at *10 (quotation omitted). The Embassy's emails to

Astashkina reveal that her 221(g) refusal status is an interim status that does not amount to a final adjudication of her application. For example, on September 26, 2024, the Embassy informed Astashkina that, "your case remains denied under INA 221(g) pending the results of necessary administrative processing." Doc. no. 1-4 at 5. (emphasis added). On October 21, 2024, the Embassy told Astashkina to "rest assured" that she would be notified "as soon as the administrative processing . . . concludes." Id. at 7 (emphasis added). On November 6, 2024, when the Embassy emailed Astashkina (erroneously) informing her that her application had been approved, it stated, "[y]our case has been processed for conclusion." Id. at 8 (emphasis added). While NVC's email to Congressman Pappas's Office indicated that Astashkina's visa had been refused and that a consular officer "may re-adjudicate" or "may reconsider" the case, it also conceded that it had not rendered a final decision in that administrative processing was not yet "completed." Doc. no. 1-5 at 3; see Aramnahad v. Rubio, No. 24-cv-1817-MAU, 2025 WL 973483, at *9 (D.D.C. Mar. 31, 2025) ("[Even if the agency] choose[s] to characterize a consular officer's decision to place an application in administrative processing as a final refusal . . . that magic word is not a get-out-of-review-free card." (quotation omitted)). Indeed, on August 26, 2025, the Embassy emailed Astashkina explicitly informing her that it needed to conduct "additional review" before it could make a "final decision" regarding her eligibility for a visa. Doc. no. 1-4 at 16 (emphasis added). Moreover, on June 11, 2026, the Department of State's website indicated

that Astashkina's case had been "Returned to NVC" for administrative processing. Doc. no. 13-1 at 3.

Thus, Shuba has sufficiently alleged that in issuing Astashkina a 221(g) refusal and then placing her application into administrative processing, the government has yet to finally adjudicate her application and has therefore not taken all the action it is legally required to take.[8] See Arapov, 2025 WL 2732722, at *6 (observing that when a consular officer places an application in administrative processing, they have not "truly" made a decision to deny a visa, and "certainly not in any final sense"). Shuba is therefore "not challenging the result of a visa decision, but only its timing." Dib, 2026 WL 1578859, at *3. Shuba seeks a "conclusive answer one way or the other . . . ." Arapov, 2025 WL 2732722, at *6. For these reasons, the court rejects the government's argument for dismissal on the basis of consular nonreviewability. Cf. Hassan v. Dillard, 758 F. Supp. 3d 973, 983 (D. Minn. 2024) (rejecting an analogous argument because it "rests on the flawed premise that

[8] The governments relies primarily on Conley v. U.S. Department of State, 731 F. Supp. 3d at 111, and Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (per curium), two decisions which hold that, once the government has issued a 221(g) refusal and placed the application into administrative processing, the government is not required to take any further action on a visa application. These cases are not persuasive because—as other courts have noted—they "elevate 'form over substance'" rather than "focus 'on what is actually happening.'" Janay, 743 F. Supp. 3d at 112 (quoting Al-Gharawy, 617 F. Supp. 3d at 16)); see, e.g., Arapov, 2025 WL 2732722, at *5. Finally, Karimova focused solely § 555(b) of the APA as the source of the consular officer's alleged duty to act. But here, in addition to § 555(b), Shuba bases his claims in § 706, as well as provisions of the INA and the statute's implementing regulations. See supra; Aramnahad, 2025 WL 973483, at *8 (distinguishing Karimova for this reason and collecting similar cases).

[the] visa application has been finally resolved and [plaintiff] seeks to overturn that decision or have the Court order reconsideration of it”).

## II. Shuba Adequately States an Unreasonable Delay Claim

The government next argues that Shuba fails to state an unreasonable delay claim. To state an unreasonable delay claim under the APA, the plaintiff must plausibly allege (1) that the government failed to take an action that it is required by law to take, Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004), and (2) the government’s delay in taking this action was unreasonable, Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023).[9] The government argues that Shuba fails on both prongs.

Regarding the first prong, the government contends it has no duty to “re-adjudicate” a visa application after a consular officer issues a refusal and places the application into administrative processing. The court rejects this argument for the same reason it rejected the government’s consular nonreviewability argument in Part I. Shuba has sufficiently alleged that in failing to make a final decision on

---

[9] Shuba’s request for mandamus relief does not meaningfully alter what he must allege to adequately state an unreasonable delay claim. See Kinuthia v. Biden, Civ. No. 21-11684-NMG, 2022 WL 17653503, at *4 n.7 (D. Mass. Nov. 9, 2022) (noting that, “where agency action has allegedly been unreasonably delayed, courts recognize that a mandamus claim is, effectively, an APA one”); Al-Gharawy, 617 F. Supp. 3d at 17 (noting that the standards for obtaining relief under the APA and the Mandamus Act on an unreasonable delay claim are “essentially the same” (quoting Vietnam Veterans of Am. v. Shinseki, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010))); In re Core Commc’ns., Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (explaining that, to obtain relief on an unreasonable delay claim, plaintiff must show that issuance of writ of mandamus would be justified).

Astashkina's application, the government failed to carry out a clear, non-discretionary duty. See Norton, 542 U.S. at 64.

Regarding the second prong, the government argues that Shuba has failed to plausibly allege that the delay in this case has been unreasonable. This circuit analyzes unreasonable delay claims using a nonexhaustive set of six guidelines first outlined in Telecommunications Research and Action Center v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). See Towns of Wellesley, Concord, and Norwood, Mass. v. FERC, 829 F.2d 275, 277 (1st Cir. 1987); V.U.C. v. U.S. Citizenship and Immigr. Servs., 557 F. Supp. 3d 218, 223 (D. Mass. 2021). These guidelines are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (citations and quotations omitted).

As the undersigned has recently observed, the above guidelines demonstrate that "addressing an unreasonable delay claim is 'ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.'" Raouf, 702 F. Supp. 3d at 32 (quoting Al-Gharawy, 617 F. Supp. 3d at 17); see also Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 178 (1st

Cir. 2016) ("[D]etermining whether a timeframe for agency action is unreasonable involves more than a matter of simple arithmetic."). "Because an analysis of the TRAC factors typically requires the court to wade through the particular facts and circumstances of an agency's delay, courts generally conclude that 'undertaking such a fact-bound analysis at the motion to dismiss stage is premature.'" Raouf, 702 F. Supp. 3d at 32 (quoting Al-Gharawy, 617 F. Supp 3d at 17-18); see, e.g., Tasneem, 2026 WL 905311, at *11-14; Roe v. Mayorkas, Civ. No. 22-cv-10808-ADB, 2023 WL 3466327, at *17 (D. Mass. May 12, 2023); Litvin v. Chertoff, 586 F. Supp. 2d 9, 12 (D. Mass. 2008).

The government does not offer any reason why this court should undertake the TRAC inquiry at this early stage in the litigation. Rather, it dives headlong into the merits of the TRAC analysis, primarily arguing that the length of delay in processing Astashkina's visa is per se not unreasonable. Shuba alleges that it has been almost three years since he first submitted his K-1 visa petition for Astashkina. There is no information in the record about what rules, if any, the government applies in determining how quickly or slowly to adjudicate a visa application like Astashkina's. As in Raouf, the court finds it premature to undertake this inquiry where the government "merely argue[s] that the length of the delay in this case is not unreasonable as a matter of law, without pointing to agency constraints or procedures that could justify the delay." 702 F. Supp. 3d at 30; see Xiaobing Liu v. Blinken, 544 F. Supp. 3d 1, 11 (D.D.C. 2021) ("[The government] must show an identifiable rationale governing [its] decisions." (quotation omitted)).

The government itself acknowledges that "[w]hether a rule of reason exists for agency action cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Doc. no. 8-1 at 17 (quoting Tate v. Pompeo, 513 F. Supp. 3d 132, 148 (D.D.C. 2021)).

Without a fully developed record, the court is unable to assess the nuanced list of principles courts must consider in deciding an unreasonable delay claim. TRAC, 750 F.2d at 80. Shuba alleges that the delay continues to cause both Shuba and Astashkina significant emotional and financial hardship, due to their unique medical and occupational situations. At this stage, the court must construe these allegations as true. The government argues that Shuba seeks to be placed "ahead of other similarly situated noncitizens awaiting adjudications" which would not be fair to other similarly situated noncitizens. Doc. no. 8-1 at 18. A final determination of these issues should be resolved with the benefit of a more fully developed record. See, e.g., Raouf, 702 F. Supp. 3d at 32; Mayorkas, 2023 WL 3466327, at *17; Litvin, 586 F. Supp. 2d at 12. The court therefore denies the government's motion to dismiss with respect to Raouf's unreasonable delay claim.

## III. Shuba Fails to State a Due Process Claim

Shuba alleges that the government's failure to adjudicate Astashkina's visa application violates his rights to substantive and procedural due process under the

Fifth Amendment. The government argues that he has failed to plead facts upon which relief could be granted. The court agrees with the government.

"[T]o state a valid claim for a procedural or substantive violation of the Due Process Clause, plaintiffs must 'exhibit a constitutionally protected interest in life, liberty, or property.'" Alvarado Aguilera v. Negrón, 509 F.3d 50, 53 (1st Cir. 2007) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005)). In dismissing an analogous claim in Raouf, this court concluded that the plaintiff "lack[ed] a legitimate claim of entitlement to the issuance of a visa to her noncitizen spouse." 702 F. Supp. 3d at 34. The following year, the Supreme Court held that a U.S. citizen could not mount a substantive due process challenge to a consular officer's denial of her husband's visa application because she did "not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." Muñoz, 602 U.S. at 909. The Court also "rejected the notion that the U.S. citizen could allege that the denial of her husband's visa application violated her procedural due process rights." Ghannad-Rezaie, 757 F. Supp. 3d at 156 (citing id. at 916-19).

Shuba offers no compelling reason why the court should reach any other result here. Accordingly, the court grants the government's motion to dismiss as to Count III. See Key v. Palmer, No. 2:24-CV-01563 AC, 2024 WL 4289582, at *6 (E.D. Cal. Sept. 25, 2024) ("Because neither plaintiff nor her spouse has a fundamental right connected to plaintiff's husband's admission into the country, neither may state a due process claim associated with any delay in processing plaintiff's spouse's

visa application." (citing Muñoz, 602 U.S. at 903)); see also Ghannad-Rezaie, 757 F. Supp. 3d at 156 (holding that Muñoz "forecloses" substantive and procedural due process claims related to delay in adjudicating plaintiff's parents' visa applications).

## CONCLUSION

The government's motion to dismiss (doc. no. 8) is granted in part and denied in part. It is granted with respect to Shuba's due process claim (Count III). It is denied in all other respects.

SO ORDERED.

Landya McCafferty
United States District Judge

August 17, 2026

cc: Counsel of Record